JAMES C. and MARY C. REYNOLDS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Reynolds v. Commissioner
Docket No. 1040-79.
United States Tax Court
T.C. Memo 1980-422; 1980 Tax Ct. Memo LEXIS 163; 40 T.C.M. (CCH) 1355; T.C.M. (RIA) 80422; September 23, 1980, Filed James C. Reynolds, pro se. Robert P. Edler, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined deficiencies in petitioners' income tax for the calendar years 1974 and 1975 in the amounts of $1,314.97 and $1,641.45, and additions to *164 tax under section 6651(a), I.R.C. 1954, [1] in the amounts of $327.25 and $337.20, respectively. The issues for decision are (1) whether petitioners are entitled to deductions for business promotion expenses in each of the years 1974 and 1975 and, if so, the amounts of such deductions; (2) whether petitioners are entitled to deductions for automobile expenses in each of the years 1974 and 1975 in excess of the amounts conceded by respondent, and whether in 1974 petitioners are entitled to deductions for telephone expenses and Christmas public relations expenses in excess of the amounts conceded by respondent; and (3) whether respondent properly determined an addition to tax under section 6651(a) for the delinquent filing of petitioners' tax returns for each of the years 1974 and 1975. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners, husband and wife, who resided in St. Louis, Missouri, at the time of the filing of the petition in this case, filed joint Federal income tax returns *165 for the calendar years 1974 and 1975 with the Midwest Internal Revenue Service Center, Kansas City, Missouri, on January 14, 1977, and February 7, 1977, respectively. James C. Reynolds (petitioner) was a wholesale liquor salesman employed by the St. Louis Liquor Company during the years here involved. The nature of petitioner's business was calling on various customers with liquor licenses and attempting to sell the products distributed by his employer. In addition to selling, petitioner's responsibilities included promoting the products sold by his employer and collecting accounts from his customers. During the years 1974 and 1975, petitioner had approximately 200 accounts to which he sold his employer's products. His customers included package liquor stores, cocktail lounges, grocery stores and drugstores. He visited certain of these customers as frequently as once a week and others as infrequently as once a month. Petitioner's sales territory consisted of a specific section of St. Louis, Missouri, which was approximately 8-1/2 miles square. Petitioner covered this territory by driving his personal automobile. During 1974 and 1975 petitioner drove two different Chrysler *166 Imperial automobiles. The Chrysler he drove during 1974 was a 1973 model which he purchased in April 1973. That automobile was stolen, and in April 1975 petitioner purchased a 1974 Chrysler Imperial automobile which he drove for the balance of 1975. Mrs. Reynolds had an automobile of her own, which was also a Chrysler. Mrs. Reynolds rarely drove petitioner's automobile. Petitioner, other than occasionally driving his automobile to his business office, would on rare occasions drive the automobile for certain other personal purposes. Petitioner kept books and samples and various items in the back of his car. If petitioner used his car for transporting his family, he had to remove these items. Except for rare occasions, Mrs. Reynolds' car was used for family purposes. During each of the years here in issue, 90 percent of the use of petitioner's automobile was for business. During 1974, the entire automobile expense incurred by petitioner for both personal and private use was $2,488 ($1,587 of depreciation and $901 of expenses for gas, oil, car washes and the like). For the year 1975, petitioner did not have a record of his actual automobile expenses. During 1974 and 1975, *167 petitioner was compensated on the basis of 3 percent of sales with a guaranteed draw of $800 a month. In addition to this compensation, petitioner received from his employer $200 per month as a promotional allowance and $125 per month as a car expense allowance. The total allowances received by petitioner for the year 1974 were $3,850, and the total allowances for 1975 were $3,900. Petitioner was not required to account to his employer for these allowances for promotional and automobile expenses. The amount received by petitioner as compensation through commissions or draws was $9,779.30 in 1974 and $9,791.24 in 1975. When petitioner called on liquor stores, grocery stores or drugstores that sold liquor, in an effort to sell the products of his employer he would quite often purchase a half pint of a brand carried by his employer and give it to a customer who was purchasing a different brand.The prices of the half pints purchased by petitioner for various customers ranged from $1.65 to $1.80. The purchases were always for individual customers and not for the liquor retailer since it was illegal for a salesman to purchase products for a retailer. There was a limited time period *168 of 30 days during which a new product to be introduced by a wholesaler could be provided directly to the retailer. However, in these cases petitioner's employer provided the salesmen with samples to be given directly to the retailer and no charges were made to the salesmen for the samples. When petitioner purchased a half pint to give to a customer, he would usually do it with a suggestion that the customer try this brand and see how he liked it. During 1974 and 1975 when petitioner visited cocktail lounges or bars, he quite often would buy a drink for some of the customers at the bar or cocktail lounge of a product which he was selling for his employer.He would pick out customers whom he saw drinking a different brand of a product similar to one carried by his employer and suggest that they try his employer's brand. Petitioner would take some of his customers to lunch at the Playboy Club or other locations and buy lunch and at times drinks for them. Playboy Club was not a customer of petitioner. During the years here in issue, petitioner belonged to a private club called the Royal Vagabond. On occasions petitioner took customers to this club and on other occasions took *169 his wife and social friends to this club. During 1974, petitioner maintained a diary-form notebook. Each day as he called on customers he would make a note of the purchases he made of half pints of whiskey to give to individual customers of the establishment that was his customer and the amount he spent purchasing drinks for customers of a cocktail lounge or bar which was one of his customers. At the end of the day he would enter the name of the establishment at which the expenditure was made and the amount of the expenditure in the diary he kept. He did not enter the name of the individual to whom the sample or drink was given since generally he did not obtain the name of such individual. Petitioner also entered in this book, on various days, amounts spent for luncheons but rarely entered the name of the person who accompanied him to lunch, and in no instances entered any other details with respect to the luncheon, such as the discussions which he had with his guest or the relationship to his business of the individual taken to lunch. Many of the cocktail lounges which were customers of petitioner had a "kitty" for Christmas gifts to the waitresses. When petitioner called on *170 a lounge which had such a "kitty" during the Christmas season he was expected to, and did, put an amount of a few dollars up to an amount of $10 into the "kitty." Petitioner entered the amounts put in various "kitties" in his diary for 1974 under the designation "kitty," but did not in each instance show the cocktail lounge where the "kitty" was located. The total amount listed in petitioner's diary as contributions to "kitty" for Christmas gifts to cocktail waitresses for the year 1974 is $80. When petitioner would obtain orders, he would very often call the orders in to the wholesaler from a public telephone. This was petitioner's custom for all the weeks he worked during 1974 and 1975. However, for only one week in 1974 did petitioner list the actual amount of his expenditures for such telephone calls. For the week of May 27, 1974, petitioner did list the cost of telephone calls each day of the 5-day week. The daily entries ranged from 60 cents to $2 and the average of the entries was $1.42 per day. For the other weeks, petitioner made a notation that telephone expense was estimated at $2 a day. At the beginning of 1975 petitioner kept a diary notebook similar to the *171 one he kept for 1974. Sometime in June 1975 the diary petitioner was keeping was either lost or stolen. Petitioner did not attempt to reconstruct his 1975 diary, and for the balance of the year kept no diary of the cost of packaged whiskey purchased to give to consumers, drinks purchased in bars or cocktail lounges, automobile expenses, or any other expenses of his business. In both 1974 and 1975 petitioner worked 240 days a year. During both 1974 and 1975 local calls in St. Louis from day telephones were 10 cents a call. Petitioners' Federal income tax return for the year 1974 was signed by petitioners on January 10, 1977, and their Federal income tax return for the calendar year 1975 was signed by petitioners on February 3, 1977. On their 1974 Federal income tax return petitioners claimed total deductions for business expenses of $5,452.04 which were disallowed in full by respondent except for an allowance of $1,119.15 for employee automobile business expenses. At the trial and on brief, respondent conceded the deductibility of certain of the items disallowed in the notice of deficiency, leaving in issue the entire $2,177.19 of business promotion expenses, $230 of the *172 $480 of telephone expenses, the $80 of Christmas public relations advertising expenses, and $1,504.85 of the $2,629.85 automobile expenses. For the year 1975, petitioners claimed a total of $5,445.37 as miscellaneous business expenses and respondent disallowed the entire claimed deduction. At the trial or on brief, respondent has conceded the deductibility of all these claimed items except $2,394.19 of business promotion expenses, and $1,896.18 of the $3,021.18 of automobile expenses. Petitioner included in his reported income on his tax return for each of the years 1974 and 1975, in addition to the commission and draw as shown on the Form W-2 furnished him by his employer, the $3,850 in 1974 and the $3,900 in 1975 of promotional and automobile expenses received from his employer. ULTIMATE FINDINGS OF FACT 1.Petitioner is entitled to deduct $1,411 as sales promotional expenses in 1974 and is entitled to no deduction for such expenses in 1975. 2. Petitioner is entitled to deduct $2,240 in each of the years 1974 and 1975 as automobile expenses.
3. Petitioner is not entitled to deduct in 1974 any telephone expenses in excess of the $250 conceded by respondent. 4. *173 Petitioner is entitled to deduct $80 as Christmas public relations expenses for amounts contributed to "kitties" for cocktail waitresses in 1974. OPINION Section 162 provides for the allowance as a deduction of all ordinary and necessary expenses paid or incurred during a taxable year in carrying on a trade or business. Clearly, this record establishes that petitioner did incur ordinary and necessary expenses for promoting his employer's product. However, section 274(d) provides that no deduction shall be allowed with respect to any item of ordinary and necessary business expenses under section 162 with respect to an activity of the type generally considered "to constitute entertainment, amusement, or recreation, or with respect to a facility used in connection with such an activity," or "for any expense for gifts," unless the taxpayer establishes by adequate record or by sufficient evidence corroborating his own statement the amount, time, place, and business purpose of the expense and the business relationship to the taxpayer of the person involved. From the evidence, it is clear that the amounts claimed by petitioner as promotional expenses fall under the category of *174 either entertainment or gifts as set forth in section 274(d). Section 1.274-2(b)(1)(i), Income Tax Regs., provides that-- the term "entertainment" means any activity which is of a type generally considered to constitute entertainment, amusement, or recreation, such as entertaining at night clubs, cocktail lounges, theaters, country clubs, golf and athletic clubs * * *. Section 1.274-2(b)(1)(iii)(a), Income Tax Regs., provides that any amount which might be considered either a gift or entertainment should be considered as entertainment rather than a gift. However, section 1.274-2(b)(1)(iii)(b)(1) of the regulations specifically states that an expenditure for packaged foods or beverages "transferred directly or indirectly to another person intended for consumption at a later time" should be deemed a gift. Under these regulations we conclude that the amount spent by petitioner for purchasing drinks for individuals at bars or cocktail lounges and the lunches to which petitioner took customers and friends clearly falls under the category of entertainment.However, the half pints of whiskey which petitioner purchased at various retail outlets to present to individuals who were purchasing *175 a brand of alcoholic beverage other than one distributed by petitioner's employer would fall under the category of gifts. For the year 1974, the diary maintained by petitioner clearly establishes the amount, time, and place of the drinks purchased by petitioner for customers of cocktail lounges and bars as required by section 274(d). However, the notebook itself does not establish the business purpose and business relationship to petitioner of the persons entertained. The regulations further provide that in certain instances the business purpose might be apparent if the business relationship is properly established. It requires no further elaboration to establish the business purpose of drinks bought for customers of cocktail lounges to introduce them to the products distributed by petitioner's employer. The only aspect missing in petitioner's record is the name of the individuals for whom the drinks were purchased.Section 1.274-5(c)(3), Income Tax Regs., provides that the substantiation requirements of section 274(d) are satisfied if the taxpayer establishes each element of the expenditure by his own statement and by "other corroborative evidence sufficient to establish such *176 element." Since it would be unreasonable to expect petitioner to obtain the name of each person at a bar or cocktail lounge for whom he bought a drink, we have concluded that in 1974 petitioner's own testimony, supported by the corroborative evidence of his diary, sufficiently establishes the items required to be established by section 274(d). [2]
We have reviewed the copy of petitioner's diary which was received in evidence and determined the items we could clearly identify as being the costs of drinks purchased by petitioner for customers *177 of cocktail lounges and bars. These amounts have been included in the $1,411 which we have found to be substantiated under the provisions of section 274(d) for the year 1974. The evidence is so clear that petitioner has failed to establish the required element of section 274(d) with respect to the lunches purchased at the Playboy Club and other places for persons he stated were customers that little discussion of this aspect of the case is required.Petitioner rarely noted the names of the customers he entertained and in no instance noted the business purpose of the luncheons. The diary maintained by petitioner was little more than a notation of the amount spent for the luncheon and the name of the place where the luncheon was held. In most instances petitioner in his testimony was unable to state who had been entertained at the luncheon, and in no instance was he able to state the business purpose of the luncheon. One entry in the notebook under December 31, 1974, concerned an amount of $189 for the expense of a New Year's party for 12 people. Petitioner was able to recall that of the 12 people entertained only 2 were customers and he could not recall the names of the 2 customers. *178 Petitioner has also totally failed to show that the dues he paid to the Royal Vagabond Club are deductible under either section 162 or section 274(d). Section 1.274-5(b)(5), Income Tax Regs., provides that for a business gift to be deductible the amount or cost of the gift, date of the gift, description of the gift, the business purpose of the gift, and the business relationship of the person to whom the gift was made to the person making the gift must be shown. Unquestionably, petitioner's diary showed the amount of each of the gifts of half pints of whiskey, which amounts ranged from $1.65 to $1.80, and the time and the business purpose of the gifts. Although the description of the gift is not specifically contained in the diary, it is reasonably clear from the amount noted and other notations in the diary that each item given was a half pint of some brand of alcoholic beverage which petitioner sold to retailers on behalf of his employer. The business relationship of each individual to whom a gift was made is clear. The individual was a consumer purchasing a competitive brand, and the small bottle of petitioner's brand was given to him with the hope that he would change brands. *179 Here again we view it to be unreasonable to expect petitioner to obtain the name of the individual to whom he presented a half pint of whiskey costing less than $2. We have therefore included in the $1,411 that we consider to be properly substantiated as a deduction under section 274 all the times we could specifically identify in the diary as being gifts of half pints of whiskey to various consumers who were purchasing a competitive brand in a retail establishment to which petitioner sold his employer's product. We do not doubt that petitioner used the same procedure of purchasing drinks and giving bottles of whiskey and purchasing lunches for various people in 1975 that he used in 1974. However, we have concluded that petitioner has totally failed to establish that these deductions are allowable because of his failure to comply with the requirements of section 274. Section 1.274-5(c)(5) of the regulations provides that if a taxpayer can show that he at one time had adequate records but due to circumstances beyond his control, such as destruction by fire, flood, earthquake, or other casualty, they are not available, he may reconstruct those records for use in substantiating *180 a claimed deduction. Petitioner has not shown that his records for 1975 are unavailable because of a theft or other casualty. He stated that they may have been stolen or he may have lost them. An inadvertent loss of records does not relieve the taxpayer of the substantiation requirements of section 274. Gizzi v. Commissioner,65 T.C. 342 (1975). Petitioner in this case has failed to show that he made any effort to reconstruct the lost records fo 1975. In addition, the records were lost in approximately June of 1975 and petitioner did not keep records after that date. On the basis of this record, we conclude that petitioner is not entitled to any deduction of the claimed promotional expenses in 1975 because of his failure to substantiate any part of the claimed deduction as required by section 274. Petitioner's records for 1974 show his total automobile expenses. Petitioner stated that he thought he had automobile expenses in addition to those shown by his records. However, since his records were daily and meticulous, we have determined the total automobile expenses as shown by petitioner's 1974 records. As set forth in our findings, the total expenses *181 fo personal and business use of the automobile were $2,488. Considering petitioner's testimony and the record as a whole, we have concluded that petitioner has established that 90 percent of the use of his automobile in both 1974 and 1975 was for business purposes and in that manner arrive at a business automobile expense for 1974 of $2,240. Petitioner had no records of automobile expenses for 1975. He testified, however, that his use of his automobile in 1975 was substantially the same as his use of it in 1974. We have therefore concluded that for 1975 petitioner is entitled to the same deduction for automobile expenses as he established for 1974. While petitioner estimated his telephone expenses in 1974 at $2 a day for 240 days, the only record available does not support this claim. For this reason we have concluded that petitioner has failed to establish that he is entitled to a deduction for telephone expenses in 1974 in excess of the $250 now conceded by respondent to be deductible. The final item in issue is the $80 which petitioner put in the Christmas "kitties" for cocktail waitresses. Petitioner's record shows the amount of each contribution he made to a "kitty. *182 " Respondent initially did not take the position that this item was governed by the provision of section 274. On brief, respondent states that he now believes that the amounts contributed to cocktail waitresses should be designated as a form of promotional expense or gift which requires substantiation under section 274 in order to be deductible. Respondent did not take this position at the trial. Therefore, this is a new issue raised on brief and we have not considered it. We hold petitioner is entitled to deduct the $80 he placed in the "kitties" for cocktail waitresses in 1974. The record clearly establishes that petitioners' return for each of the years 1974 and 1975 was not timely filed. Petitioners offered no explanation of the failure to timely file their returns. Section 6651(a) provides for an addition to tax for failure to timely file a return unless a taxpayer shows that the failure was due to reasonable cause and not to willful neglect. The burden to show reasonable cause is on petitioners. Fischer v. Commissioner,50 T.C. 164, 177 (1968). Petitioners have totally failed to show reasonable cause for the late failing of their returns. We therefore *183 sustain respondent in the determination of an addition to tax under section 6651(a) for failure of petitioners to timely file their tax return for each of the years 1974 and 1975. Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954 as amended and in effect in the years in issue.↩
2. With respect to the drinks purchased in cocktail lounges and bars by petitioner for customers of the lounge or bar, this case is indistinguishable from Diller v. Commissioner,T.C. Memo. 1978-321, 37 TCM 1332, 1334, 47 P-H Memo. T.C. par. 78,321, p. 1319 (1978), in which we held a diary maintained by an outside liquor salesman sufficiently established the elements required by section 274(d)(2) to permit a deduction of the amounts expended. In that case we stated: Finally, we see no reason to expect or require petitioner to obtain and note the names of unknown customers of the bar or restaurant where he buys drinks. * * *↩